UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JODI HAMSTRA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 2:22-CV-145-PPS-JEM ) |
| DONALD W. SHELMON, | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is one of a string of cases spawned from the messy divorce between Greg and Jodi Hamstra. In 2014, Greg filed a Petition for Dissolution against Jodi in Jasper Superior Court (Cause No. 37D01-1406-DR-000499). The divorce was finalized June 20, 2016, by entry of a Decree of Dissolution. While a detente prevailed for approximately two years after the finalization of their divorce, by 2018, Greg and Jodi found themselves embroiled in a series of legal disputes concerning property distributed pursuant to their divorce settlement agreement.

One of those cases, *GJMS, LLC v. Hamstra Builders Inc. et al.*, No. 2:18-CV-135-PPS (N.D. Ind. Apr. 5, 2018), was pending in this district for over five years. It was slated for trial before me in August 2023, but the parties settled the claims prior to trial. As explained in greater detail below, in the *GJMS* case, the parties disputed the proper application of the domestic-relations exception to diversity of citizenship jurisdiction. I entered a comprehensive opinion and order finding that I had subject matter jurisdiction to entertain the suit, notwithstanding the fact that the claims were essentially spawned

from the parties' negotiations during the divorce settlement proceedings. *See GJMS LLC v. Hamstra Builders Inc.*, 2023 WL 2889268, at *1 (N.D. Ind. Apr. 11, 2023), *motion to certify appeal denied*, 2023 WL 3477189 (N.D. Ind. May 16, 2023).

The complaint in this case was filed in May 2022. It asserts a single claim for fraud against Donald Shelmon under Indiana law for actions that took place some six years earlier. [DE 1, ¶¶ 18–23.] Jodi claims that in the course of the divorce proceedings, Shelmon (Greg's attorney) conspired with Greg and a third individual named Mitchell Van Kley to swindle her out of a parcel of real estate, referred to as the "French Lick" property. The trio allegedly represented in the course of the divorce proceeding that French Lick was owned by a company, GJMS, in which Greg possessed a membership interest, and was therefore marital property. Jodi was awarded GJMS in the divorce proceedings, but it turned out that the French Lick property had actually been sold in March 2016—prior to the divorce settlement agreement—for $630,000. In other words, it was not GJMS property at the time the divorce settlement was finalized. Jodi claims she was defrauded out of the French Lick property and seeks as relief compensatory damages and punitive damages totaling $3,890,000.

Mr. Shelmon seeks dismissal for lack of subject matter jurisdiction, arguing that Jodi's claims fall within the domestic relations exception to diversity jurisdiction, or, alternatively, that the case must be dismissed under the doctrine of res judicata. [DE 28; *see* DE 29; DE 30; DE 35; DE 39; DE 40.] Because I find that neither the domestic relations exception nor the doctrine of res judicata deprive me of jurisdiction over Jodi's fraud

claim, the motion must be denied.[1]

## Background

For purposes of determining the existence of subject matter jurisdiction, a complaint's allegations are taken as true unless a defendant offers evidence calling jurisdiction into question. *Amling v. Harrow Industries LLC*, 943 F.3d 373, 376 (7th Cir. 2019). I may also "look past the complaint to any pertinent evidence." *Id.*

As explained in my opinion and order in the earlier case, GJMS was and is in the business of acquiring, owning, and managing real estate. Prior to the divorce, GJMS had three owners—Greg, his dad (Wilbert) and Van Kley. Just prior to the divorce dispute being resolved, Van Kley and Wilbert signed over their interest in GJMS to Greg. In the process, all of GJMS became a marital asset, and it was awarded to Jodi in the divorce. Mr. Shelmon was a former attorney for GJMS, LLC. He also served as Greg's personal attorney in the divorce proceedings.

In the course of discovery in state court, Jodi was furnished a GJMS Financial Summary document dated December 31, 2014. [DE 1-1.] This document reflected that GJMS owned various parcels of real estate, including a property known as "French Lick." *Id.* Thereafter, Jodi claims that she was never furnished "any supplemental

---

[1] One last point in exposition. Oddly, while *three* individuals with different relationships to GJMS allegedly conspired to defraud Jodi in connection with the transfer of the French Lick property in the course of the divorce proceedings, the complaint does not assert any claims against Greg or Van Kley. The sole claim, and the sole defendant facing upwards of $4,000,000 in alleged damages, is Greg's divorce attorney, Mr. Shelmon. The parties have not addressed whether Jodi's failure to join Greg and Van Kley as defendants warrants dismissal for failure to join required parties under Rules 19(a) and 19(b) of the Federal Rules of Civil Procedure. Moreover, Shelmon has not moved to dismiss the count for failure to state a claim in light of Rule 9(b)'s heightened pleading standard for fraud claims. I decline to do so *sua sponte*.

information" indicating that any change had occurred in the ownership of the properties listed in the 2014 summary document. She did not receive the terms of sale or any documentation associated with the sale transaction prior to the settlement of the divorce proceedings.

From the face of the complaint, it's not clear if she ever received this information at some later date (*i.e.*, after finalization of the divorce settlement). The complaint is also silent as to where the sales proceeds went on GJMS's balance sheet – that is, whether the money remained in the company, transferred directly to Jodi, or was otherwise withdrawn by its partners before ownership of the company was transferred over to her. Shelmon, for his part, asserts that the proceeds from the sale of the French Lick property supplied funds for Greg to pay Jodi $600,000, as required by a separate provision in their divorce settlement agreement. [DE 30 at 6; *see* DE 29-4 at 4.]

In March 2016, the French Lick property was indeed sold. It went to a company called O'Reilly, Inc. for $630,000. [DE 1-2.] Jodi claims that Shelmon, Van Kley, and Greg were all aware of the sale, but she was left in the dark through the course of negotiating the divorce settlement agreement. The sales agreement itself was executed by Greg on August 25, 2015, *id.* at 10, with notice to be provided to an individual, John Fulkerson, who is not identified in the complaint, but who appears to have worked for the company in some capacity. Rather than specifically delineate what Shelmon did at the time the sales agreement was negotiated and the property later sold, Jodi claims that he "intentionally and maliciously conspired with Greg and Van Kley as part of a wrongful

4

scheme of non-disclosure, omissions, and misrepresentations" to conceal the fact that the property was being sold, and "also took affirmative steps to mislead Jodi regarding the status of that property, including suborning perjury" during the divorce proceedings. [DE 1, ¶ 12.]

The fraud claim is essentially based on two sets of alleged material misrepresentations or omissions, neither of which were made by Shelmon himself. Jodi points to the 2014 GJMS Financial Summary document, which Greg provided her through Shelmon as his divorce counsel, as well as Van Kley's deposition testimony during the divorce proceeding, which Shelmon elicited in the same role. In May 2016, two months post-sale, Van Kley testified that French Lick was an asset of GJMS. Jodi claims that Shelmon "affirmatively allowed that testimony to stand without correction," even though he knew it was false "and constituted perjured testimony." *Id.*, ¶ 13. Later that same month, the parties reached a Mediated Property Settlement Agreement whereby, as I mentioned earlier, Jodie was awarded GJMS. [DE 1-3.] Jodi claims that she was never told about the sale of the French Lick property or the falsity of Van Kley's testimony prior to executing this agreement. Shelmon apparently takes the view that he disclosed this information to Jodi during the mediation. The complaint acknowledges as much, but Jodi says this is "untrue." [DE 1, ¶ 14.]

As noted, the divorce settlement agreement provided that Jodi would receive 100% of the membership interests in GJMS. She asserts that this division of property was based on her understanding that one of the properties in the GJMS portfolio was the

5

French Lick property. This was based on the aforementioned statements in the 2014 GJMS Financial Summary document and Van Kley's deposition testimony. From her view, this information was all false, and Shelmon is to blame because he improperly concealed its falsity "as an inducement for Jodi to enter the Settlement as structured." *Id.*, ¶ 16. Why he would do such a thing is not explained. While she is not suing for breach of the divorce settlement agreement itself, Jodi also notes that a provision of the settlement obligated each spouse to "have made full disclosure of all of their assets." *Id.*, ¶ 17.

Count I asserts a claim for fraud. [DE 1, ¶¶ 18–23.] At bottom, Jodi claims Shelmon knew of Greg's prior representations, business affairs, and Van Kley's deposition testimony. Despite knowing the French Lick property was no longer part of the GJMS portfolio following its March 2016 sale, Shelmon intentionally concealed the falsity of Greg's warranty and representation of "full disclosure" in the divorce settlement agreement. While it remains unclear what happened to the French Lick sale proceeds, Jodi seeks as compensatory damages the sales price for the property ($630,000), plus an additional $1,260,000 pursuant to Indiana Code § 34-24-3-1. She also seeks an additional $2,000,000 in punitive damages. [DE 1 at 5.]

## Discussion

### The Domestic Relations Exception

Shelmon has moved to dismiss this action for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Here, diversity jurisdiction is apparent on the face of the complaint. Jodi plausibly alleges that she is a citizen of the state of Michigan, Shelmon is a citizen of the

state of Indiana, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). The question is thus whether the domestic relations exception applies to trump the exercise of federal subject matter jurisdiction.

I previously summarized the relevant case law on point, *see GJMS*, 2023 WL 2889268, at *3, and will briefly restate it here for present purposes. More than 30 years ago, the U.S. Supreme Court concluded "that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Citing *Ankenbrandt*, the Seventh Circuit has observed that just because a dispute arises out of a divorce proceeding, "that alone is not enough to trigger [the] exception," which covers "a narrow range of domestic relations issues" involving the granting of divorce, decrees of alimony and child custody orders. *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018). The Circuit has commented several times on the narrowness of the exception. *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016); *Storm v. Storm*, 328 F.3d 941, 944 (7th Cir. 2003).

While the Seventh Circuit has previously talked about the "narrow" nature of the domestic relations exception, it also has expanded the exception to include a "penumbra," which the court has described as consisting of "ancillary proceedings . . . that state law would require be litigated as a tail to the original domestic relations proceeding." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998); *Storm*, 329 F.3d at 943; *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). *See also Lloyd v. Loeffler*, 694 F.2d

7

489, 492 (7th Cir. 1982) (asking whether the present dispute would have been handled as an ancillary proceeding to the underlying domestic relations matter). The Seventh Circuit suggests that I approach this question from a "pragmatic" point of view, with an eye towards "the policy goals underlying the exception." *Storm*, 328 F.3d at 944.

Those policy goals were fleshed out (and narrowed) by the Supreme Court in *Marshall v. Marshall*, 547 U.S. 293 (2006). Although *Marshall* concerned the probate exception, and not the domestic relations exception, "the two exceptions are materially identical." *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007). The Supreme Court concluded that, while the probate exception is narrow, it still "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311. As the Seventh Circuit pragmatically puts it, a federal court "should not be permitted to elbow its way into a fight" taking place in another court. *Struck*, 508 F.3d at 860.

The question thus becomes whether this case concerns property that is in the custody of a state dissolution court. If it does, then I should defer to that court because "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall*, 547 U.S. at 311. To answer this question requires an analysis of Indiana civil procedure and the Indiana Supreme Court case of *Fackler v. Powell*, 839 N.E.2d 165 (Ind. 2005). In *Fackler*, the Supreme Court held that the dissolution court retains jurisdiction to modify or clarify a property settlement agreement. *Id.* at 167. This jurisdiction includes bringing third parties—in *Fackler*, it was

8

a living trust—into the dissolution court even though that third party was not a party to the divorce proceedings. *Id.* at 170.

Having peeled through the relevant law, I will now consider the nature of the claim and whether it falls within the ancillary jurisdiction of the dissolution court. Pursuant to the divorce settlement agreement, all of the membership interests in GJMS were to be transferred to Jodi. After Greg, Wilbert, and Van Kley relinquished their interests in GJMS, the company was a marital asset subject to distribution as part of the marital estate controlled by the dissolution court. The dissolution court judge awarded that asset to Jodi (pursuant to the parties' settlement agreement) in a decree of dissolution entered June 20, 2016. [DE 29-5.] The heart of this case involves alleged misrepresentations and omissions prior to entry of the decree of dissolution that transferred ownership of GJMS to Jodi. In short, while she thought she was getting one thing at the time the divorce was finalized, she got another; and it was missing a piece of her share of the pie. Jodi's fraud claim against Shelmon (as a non-party to the divorce settlement agreement) facially falls outside what the circuit has referred to as the "core" of the domestic relations exception, because it does not involve "the granting of a divorce or an annulment, an award of child custody, [or] a decree of alimony or child support." *Friedlander*, 149 F.3d at 740.

But what about the "penumbra" of the domestic relations exception? In that respect, the question presented is whether my assumption of jurisdiction over Jodi's fraud claim in this case will intrude on a matter within the ambit of the dissolution

9

court's jurisdiction. *See Fackler*, 839 FN.E.2d at 167. Put a bit differently, are the claims in this case an effort to "modify" or "clarify" the dissolution court's decree? *Id.* If they are, then the issue is properly within the province of the dissolution court, and I cannot exercise jurisdiction to entertain this side suit.

I note that in January 2021, the dissolution court judge ruled on a post-dissolution motion to declare rights and obligations of the parties that Greg filed to clarify the terms of the decree of dissolution. [DE 35-4.] In no uncertain terms, the dissolution court held that it "cannot, by any interpretation, determine the rights of third parties who are not parties to the Mediated Property Settlement Agreement," and "any alleged corporate conduct prior to or after the dissolution date" was "not for [the dissolution court] to decide" as a tail to the divorce proceedings. *Id.* at 2–3. In other words, the dissolution court has expressly declined to exercise jurisdiction over claims involving the rights of non-parties and issues implicating non-parties that are not clearly delineated in the terms of the parties' divorce settlement agreement. This strongly suggests that the dissolution court would not be the appropriate forum for Jodi's claim against Shelmon – a claim against a third party who was not party to the divorce settlement agreement, based on his allegedly tortious conduct prior to entry of the decree of dissolution.

Shelmon responds that this interpretation of the dissolution court's jurisdiction is at odds with the Indiana Supreme Court's decision in *Fackler*. [DE 39 at 4.] Rather than take the dissolution court at its word, the argument goes, I should dismiss this action because, per *Fackler*, it is properly within its ancillary jurisdiction. I agree that *Fackler*

stands for the proposition that it may be proper to join a non-party to a divorce action in an enforcement action in a dissolution court or enforce a judgment obtained from the dissolution court against a non-party in a tail action. 839 N.E.2d at 170 ("Fackler has not persuaded us that it would have been improper to join the Living Trust in an enforcement action in the Dissolution Court or that she would not have been able otherwise to enforce a judgment obtained from the Dissolution Court against the Living Trust."). That said, *Fackler* indicates that the decision to join a non-party to a dissolution proceeding is highly fact sensitive and hinges on the relationship between the parties and the entity that would be joined in a tail proceeding.

      This case is different from *Fackler* in important ways. While *Fackler* involved a third-party claim by a spouse against the *alter ego* of her ex-husband, here, Jodi is suing her ex-husband's divorce attorney for a tort allegedly committed in the course of negotiating the terms of her divorce. *See id.* at 166–67. Shelmon suggests that because Jodi claims that he was a co-conspirator with Greg and Van Kley in allegedly defrauding her, he should be considered "the alter ego of Greg." [DE 39 at 5.] He presents no authority for this position. What is clear is that Jodi has sued Shelmon individually and makes no claim that he was Greg's alter ego, in stark contrast to the plaintiff in *Fackler*, who sued both her ex-husband and his living trust. Moreover, Jodi's claim does not seek to revisit the terms of the decree of dissolution. Rather, she claims that Shelmon wronged her by keeping mum in the face of misleading material statements pertaining to property she stood to acquire. It is not necessary for me to delve into the terms of the

11

divorce settlement agreement to determine whether Shelmon made statements or omissions that Jodi reasonably relied upon to her financial detriment. I can do that without unpacking or reinterpreting the terms of the parties' divorce settlement agreement. All of this reinforces the view that *Fackler* involved a distinct situation and that it would be unwise for me to ignore the dissolution court's express declination of jurisdiction over third parties to the dissolution proceeding.

While not controlling, I am also guided by the factually analogous matter *3BTech Inc. v. Garelick*. There, Judge DeGuilio considered whether the domestic relations exception applied to claims brought by a company against its owner's ex-wife's divorce attorney for conspiring to "engage in multiple acts of fraud by transferring money away from [the company and its affiliates]." 2021 WL 5206100, at *1 (N.D. Ind. Nov. 9, 2021). The ex-wife's attorney moved to dismiss the case for lack of jurisdiction. Finding the domestic relations exception inapplicable, Judge DeGuilio noted the Supreme Court's guidance in *Ankenbrandt* that "where the status of a family law proceeding 'has no bearing on the underlying torts alleged,' it does not fall within the domestic-relations exception." *Id.* at *5 (quoting 504 U.S. at 706). While the divorce proceeding occurred in California, not Indiana, from a factual standpoint *3BTech* is essentially identical to the case now before me. Jodi's fraud claim does not seek a form of relief distinct to family law – she is seeking damages from fraud allegedly committed by Shelmon, albeit during the divorce proceedings. And if I take the dissolution court at its word, it "cannot, by any interpretation, determine the rights of third parties who are not parties to the

12

Mediated Property Settlement Agreement," and "any alleged corporate conduct prior to or after the dissolution date" was "not for [the dissolution court] to decide" as a tail to the divorce proceedings. [DE 35-4 at 2–3.] As in *3BTech*, the tort claim here is "the exact type of claim[] which a federal court is well equipped to deal with." 2021 WL 5206100, at *5.

I acknowledge that the facts alleged involve the subject of the Hamstras' marriage and a parcel of property that was in the possession of an entity, GJMS, which was transferred to Jodi pursuant to a decree of dissolution. But a case does not fall within the domestic relations exception simply because a complaint's "factual allegations touch on the subject of marriage." *Arnold v. Villarreal*, 853 F.3d 384, 387 n.2 (7th Cir. 2017) (citing *Friedlander*, 149 F.3d at 740–41). And, as previously noted, I am further guided by the Seventh Circuit's repeated admonition as to the narrow nature of the domestic relations exception. *Kowalski*, 893 F.3d at 995; *Sykes*, 837 F.3d at 741; *Storm*, 328 F.3d at 944. In short, the domestic relations exception is no bar to diversity jurisdiction in this case.

### Res Judicata

In the alternative, Shelmon argues that the complaint must be dismissed under principles of res judicata. [DE 30 at 9–12.] Frankly, this argument is underdeveloped and hard to follow. For starters, it's not clear what prior order Shelmon believes has issue- or claim-preclusive effect on the claim asserted in this case. *See id.* at 11. It seems most likely that he is arguing that the decree of dissolution entered in 2016 precludes the fraud claim in this case under res judicata principles.

Courts "apply state res judicata principles when the earlier action in question was decided in state court." *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 n.3 (7th Cir. 2011). I apply Indiana law in this case, as an Indiana court approved the parties' divorce settlement agreements and incorporated them into a decree of dissolution. Under Indiana law, "[t]he principle of res judicata is divided into two branches: claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005). "Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or same issue between the same parties or their privies where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *Id.* It should be noted that in both cases, Indiana law requires that the party asserting the preclusive effect of a judgment be among the same "parties and their privies" as the prior case. *Id.*

Res judicata is an affirmative defense. It should thus be raised in a Rule 12(c) motion for judgment on the pleadings. But the Seventh Circuit has explained that res judicata may serve as a basis for a Rule 12(b)(6) motion to dismiss for failure to state a claim when the basis for the motion is evident on the face of the complaint. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). So I can set that procedural footfault aside.

Shelmon principally relies upon *Dodd v. Estate of Yanan*, 625 N.E.2d 456 (Ind. 1993). He asserts that this case "govern[s] preclusion issues when one party

14

impermissibly attacks a prior dissolution decree." [DE 30 at 10.] *Dodd* involved an ex-wife's claims against her former husband's estate based on the husband's alleged failure to disclose the true nature and extent of his property holdings during dissolution proceedings. The Supreme Court of Indiana held that the ex-wife's "sole avenue for redress" was to seek modification of the decree of dissolution and proceed to collect a judgment against her former husband's estate and "[t]his cannot be accomplished by a collateral attack in the probate court." 625 N.E.2d at 457. In a predecessor case, *Anderson v. Anderson*, 399 N.E.2d 391 (Ind. Ct. App. 1979), the Indiana Court of Appeals held that an ex-wife's claim for fraudulent inducement of a settlement contract against her former husband was an impermissible collateral attack on the divorce proceedings barred by res judicata. *Id.* at 397–99.

Shelmon argues in his reply brief that "[i]t appears as if Indiana law has expanded the reach of [the doctrine of res judicata] to people beyond the original parties." [DE 39 at 5.] *French*, by its terms, extends res judicata to people beyond the original parties – "their privies." 821 N.E.2d at 896. *Anderson* suggests that Indiana law has "long" barred actions for damages "against [an] adversary *or adverse witnesses* on the ground that the judgment was obtained by false and fraudulent practices or by false and forced evidence." 399 N.E.2d at 399 (emphasis added). And *Fackler* suggests that a dissolution court may exercise ancillary jurisdiction over claims against third parties to dissolution proceedings or enforce a judgment from the dissolution court against a third party. 839 N.E.2d at 170.

But, as previously explained, there is no basis to conclude that Shelmon operated as the "alter ego" of Greg, unlike the ex-husband's living trust in *Fackler*. *Cf. Thrasher, Buschmann, & Voelkel, P.C. v. Adpoint Inc.*, 24 N.E.3d 487, 496 (Ind. Ct. App. 2015) (applying *Rucker v. Schmidt*, 794 N.W.2d 114, 119 (Minn. 2011)) ("'[S]omething more than the common objective of attorney and client in obtaining an outcome favorable to the client is necessary to establish privity' for res judicata purposes."). And, as a matter of fact, Shelmon was never an "adverse witness" to Jodi in the dissolution proceeding, so that spare language in *Anderson* finds no application in this case. Finally, Shelmon presents no authority for the statement that he and Greg were "privies," for purposes of res judicata. *See Becker v. State*, 992 N.E.2d 697, 700–01 (Ind. 2013) ("'[A] privy is one who after rendition of [a] judgment has acquired an interest in the subject matter affected by the judgment,' or 'whose interests are represented by a party to the action.'"). For these reasons, Shelmon has failed to demonstrate that this case is barred by the doctrine of res judicata.

\* \* \*

For the foregoing reasons, Defendant Donald Shelmon's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 28] is **DENIED**.

**SO ORDERED**.

ENTERED: November 21, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT